Edward G. Baker, J.
Plaintiff, on October 22, 1953, was a rigger in the employ of Arthur Tickle Engineering Co. On that day he was working on the vessel S. S. Steel Age, owned by defendant, Isthmian Steamship Company, which was berthed at Pier 1, Staten Island, discharging cargo. The pier, owned by defendant, American Dock Company, had been leased to Isthmian on a day-to-day basis. The lease agreement, in the form of a letter addressed by American to Isthmian, and accepted by the latter, reads as follows:
“ Gentlemen: This will confirm arrangements for a discharging birth [sic] for Steel Age due on or about October 20, 1953.
*152 ‘ ‘ Kindly birth [sic] the vessel at the American Dock Company south side of Pier 1, Tompkinsville, Staten Island, New York. Wharfage to be at the rate of......per calendar day for the pier commencing on the arrival of the vessel and continuing until such time as the cargo is entirely cleared from the dock. Our charge for fresh water are [sic] ......per ton, electric current ...... per kilowatt, telephone service when furnished through our switchboard is charged for at the regular rates plus taxes. All incidentals necessary for the proper operation a/nd care of the pier and cleaning are for your account......” (Emphasis supplied.)
From October 20 until about 3:00 p.m. in the afternoon of October 22, International Terminal Operating Company (successor to Jarka Corp.) had been engaged, pursuant to contract with Isthmian, in unloading baled rubber from the ship. The bales were coated with a talc or powder to prevent fusing. This coating was described as “A smooth, slippery powder.” In the unloading process, some of this talc or powder and other debris was caused to be deposited on the deck of the pier in the area where the foot of a gangway used for boarding and leaving the ship, rested on the stringpiece, adjacent to one of the doors of the pier shed. The evidence indicates that this powder and other debris left in the unloading operation, had been permitted to accumulate on the pier deck, in the area described, for almost two days, rendering the deck slippery and hazardous.
The gangway was illuminated by a floodlight placed on the deck of the ship, and by another 200 watt lamp directed downward toward the stringpiece. The pier lights consisted of a string of 300 watt lamps in disc reflectors suspended 18 feet apart along the center line of the pier shed about 18 feet above the deck. The nearest lamp of the row was approximately 35 feet from the open door of the pier shed.
On October 22, at about 11:30 p.m., plaintiff descended the gangway carrying gear in his left hand and grasping the rail with his right. As he reached the stringpiece, he slipped on the accumulation of powder, caught his foot in some loose bailing wire, and fell to the deck sustaining the injuries for which he brings this action against Isthmian and American.
American cross-claims against Isthmian and the latter sues International as third-party defendant.
The credible evidence shows that, at the time of the accident, the stringpiece at the foot of the gangway was covered with an accumulation of slippery talc or powder which was deposited there, along with paper and other debris, in the process of *153 unloading the baled rubber. This was the proximate cause of plaintiff’s fall and his resulting injuries. While the usual and normal procedures were followed in the unloading operation, the condition of the stringpiece, as it was left, was one of hazard and danger to workmen using the gangway (the only means of boarding and leaving the ship) and should have been foreseen. Isthmian failed in its duty to keep and maintain the pier in a reasonably safe condition and to provide this plaintiff with a safe place to work. Isthmian had two watchmen on the pier, one of whom was stationed at the gangway all day and all through the night of October 22. It had general supervision of the work. It knew, or in the exercise of reasonable care, should have known of the hazardous condition of the string-piece at the foot of the gangway.
Plaintiff, knowing of the condition, was proceeding slowly as he reached the bottom of the gangway. The illumination there was poor. The light in the turntable at the top of the ramp furnished good illumination only about half way down the 25 feet of its length. The light cast from the pier shed door was not bright. I think plaintiff has fairly sustained the burden of establishing his own freedom from negligence in connection with the accident.
The record fails to show the violation of any duty owed by American to the plaintiff. The duty to clean the pier during the period of its occupancy was Isthmian’s. The condition which was the proximate cause of plaintiff’s fall was not related in any way to any defect in the plant or structure or its appurtenances. It resulted from the unloading operation which was conducted for Isthmian and under its supervision, and over which American had not control. There was no duty upon the part of American to provide illumination for the gangway leading from the ship or to that part of the pier (the stringpiece) upon which the gangway rested. (Flanagan v. Rosoff, 260 App. Div. 776, 777.) This was the obligation of Isthmian, and that it was so understood is evidenced by the fact that the latter did supply whatever illumination there was in that place at the time of the accident. Plaintiff has failed to prove a case against American, the owner and lessor. (See 32 Am Jur., Landlord and Tenant, § 817.)
There remains to be considered the third-party claim of Isthmian against International. The third-party complaint includes a cause of action for indemnity based upon the agreement between these parties pursuant to which the stevedoring work was performed. The question here to be resolved is whether said agreement, fairly construed, and having regard *154 to its purposes and the surrounding facts and circumstances, expresses, unequivocally, an intent that Isthmian shall be indemnified against its own negligence. (See Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36.)
In Salamy v. New York Cent. System (1 A D 2d 27, 29) the court, construing an indemnity agreement, said: 6 ‘ The intention is the thing which must appear clearly and unequivocally, however, and the agreement need not contain express language referring to the negligence of the indemnitee. The requirements of the rule are met if such an intention may be clearly implied from the language, the purposes of the agreement, and all the surrounding facts and circumstances. This is particularly so when the subject matter of the agreement deals with a specific dangerous condition, and recognizes, as foreseeable, an increased risk and the enlarged possibility of actual or claimed negligence of employees of the indemnitee.” (citing cases.)
Paragraph 11 of the agreement, so far as here relevant, provided : ‘ ‘ The stevedore shall * * * indemnify and save harmless Isthmian * * * from and against any and all claims, demands, actions and/or proceedings of any kind or nature whatsoever that may be made or instituted against [it] by any * * * person or persons, and from and against any and all loss, cost and/or expense of any kind whatsoever that may be suffered or sustained by Isthmian as a result of damage or injury to any of them * * * from causes arising out of or in any way connected with, and unless and until disproved by the stevedore, from causes claimed to have arisen out of or in connection with the stevedoring work and operations * * *. Without in any way limiting the obligation of the stevedore to duly and properly perform the stevedoring work and operations as provided in this contract, it is understood that where such claims, demands * * * and such loss, cost and/or expense exceeds $2,000,000 the stevedore shall be liable for the amount in excess of $2,000,000 only in the event of its [the stevedore’s] negligence.” (Emphasis supplied.)
As stated above, Isthmian (which, under par. 9 of the agreement, had general supervision of the stevedoring operations) was negligent in that it failed to keep and maintain the pier, and, in particular, the stringpieee at the foot of the gangway, in a reasonably safe condition; in failing to abate the hazard after notice of its existence; and in failing’ to provide plaintiff with a safe place to work. The rubber bales were unloaded by means of nets or slings in such a manner that the bales were caused to bounce and roll about on the stringpieee leaving *155 thereon an accumulation of a slippery powdery substance, bailing wire and other debris. The unloading method employed by the stevedore was the usual and customary one. There is no proof that the work was negligently performed. There is no question, however, that the slippery and hazardous condition of the stringpiece, which was the proximate cause of plaintiff’s fall, arose out of and was connected with the stevedoring operation; and the contract implicitly provides for indemnity in such a situation, even in the absence of negligence on the part of the stevedore, where the claim or demand asserted does not exceed $2,000,000. This being so, it follows that the parties must have intended that there be indemnity in connection with claims, not in excess of the stated sum, based upon the negligence of Isthmian; and paragraph 11 of the agreement, read in connection with the entire instrument, clearly evidences an intent that the stevedore’s obligation to indemnify extend to cases where Isthmian’s liability is based upon its own primary or active negligence.
For the injuries sustained, for the consequent pain and suffering, for loss of wages and medical expenses, plaintiff is entitled to judgment against defendant, Isthmian, in the sum of $16,500. Isthmian is entitled to judgment over against International in that amount. American is entitled to judgment dismissing plaintiff’s complaint, and American’s cross claim against Isthmian is dismissed. The above constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. All motions made during the course of the trial upon which decision was reserved are granted or denied, consistent with this decision.
Settle judgment accordingly. Thirty days’ stay of execution; 60 days to make a case.